ANDREWS *v.* BRACE.

1. FRAUD—SALE OF STOCK — RESCISSION — LIMITED PARTNERSHIP ASSOCIATIONS.

On a bill by a stockholder in a limited partnership association to rescind a sale of stock on the ground of fraud, there is no occasion to determine whether defendants made any misrepresentations to induce complainant to purchase, where he did not buy in reliance upon the representations, but was at the time the manager of the association, more familiar with its affairs than any of the defendants, and bought in reliance upon his own judgment.

2. PARTNERSHIP — LIMITED PARTNERSHIP ASSOCIATIONS — ORGANIZATION—IRREGULARITIES—EFFECT—SALE OF STOCK.

That a limited partnership association did not acquire a valid title to all the property specified in its articles, and that the amount of its cash capital was overstated, would not affect the validity of its organization, nor the ownership of stock by a good-faith purchaser thereof, and therefore would not give such a purchaser a right to rescind.

Appeal from Wayne; Hosmer, J. Submitted June 10, 1908. (Docket No. 66.) Decided September 10, 1908.

Bill by Fred C. Andrews against William H. Brace, David D. Cady, and Martin E. Galvin to rescind a sale of certain stock on the ground of fraud. From a decree dismissing the bill, complainant appeals. Affirmed.

*McDonald & Fowler*, for complainant.

*Dwight C. Rexford*, for defendants.

McALVAY, J. September 29, 1903, complainant became the manager of a partnership association named the "Standard Pure Food Company, Limited, of Detroit." At the same time he purchased from the three defendants —the principal shareholders in said association—75 shares (25 shares from each one) of its capital stock, paying

therefor to defendant Galvin the sum of $3,750, or $50 a share. The par value of this stock was $7,500. The stock was not delivered to complainant at that time, because, as he testifies, "both sides wanted to see if everything was satisfactory or not." Early in the year 1904 complainant, who had managed the partnership association for several months, and had become familiar with its affairs, announced his dissatisfaction with his purchase, and thereupon a new agreement was made by him and the three defendants, the terms of which are in dispute. Complainant testifies that by this new arrangement it was agreed that the capital stock of the association, then $500,000, should be reduced to $250,000, and that each of the defendants should deliver to him 50, instead of 25, shares of its capital stock. Owing to pending litigation this new arrangement was not consummated until December, 1904, and at that time each of said defendants delivered to complainant 50 shares of said capital stock. No reduction, however, had been made in the amount of the capital stock of said association. It remained, as hitherto fixed, at the sum of $500,000. About the time this stock was transferred to complainant, he received a dividend of $2\frac{1}{2}$ per cent. thereon. Soon after the stock was acquired by complainant, the partnership association was converted into a corporation, called the "Standard Pure Food Company." At the stockholders' meeting held for the purpose of forming the corporation complainant voted his stock. He received in the corporation the same number of shares he had held in the partnership association. He became secretary of the corporation. He was also its manager, and he continued to be its manager until January 1, 1906. During this time he held his stock, and exercised all the rights of a stockholder. Soon after he ceased to be manager, he tendered the stock back, and then brought this suit to rescind upon the ground of fraud. The case was heard on testimony taken in open court, and a decree entered in the circuit dismissing complainant's bill.

There is no occasion to determine whether defendants made any false representations to induce complainant to purchase this stock. He did not buy in reliance upon those representations. He acquired his stock under the new agreement made in 1904. At that time complainant was manager of the association. He was more familiar with its affairs than were any of the defendants. If any of the representations which had before that time been made were false, he knew it. He made that new agreement with his eyes open and relying upon his own knowledge and judgment. He was not defrauded.

Complainant contends that he has a right to rely upon the former false representations because this new agreement was never performed. This contention is based upon the testimony of complainant, heretofore alluded to, that according to the new agreement he was to receive 150 shares of stock of the association after the capital stock of the association was reduced to $250,000. We answer the contention by saying that we do not credit this testimony. It is contradicted by the testimony of defendants, and it is not consistent with complainant's conduct.

Complainant contends that there were certain irregularities, which he characterizes as fraudulent, in the organization of the partnership association which did not come to his attention until shortly before he commenced this suit. We answer this by saying that we do not credit complainant's testimony upon this subject. We think every material representation which could possibly be called fraudulent was known to him at the time the new agreement was made.

Complainant also contends that the partnership association was not legally organized, and that he has a right to rescind because he contracted to purchase stock in the partnership association limited. The partnership association was organized in due legal form. The material irregularities brought to our attention are these: That it did not acquire a valid title to all the property specified in

its articles, and possibly that the amount of its cash capital was overstated. Such irregularities as these would not affect the validity of the organization. In other words, complainant would be, especially if he acted in good faith, an owner of stock in a partnership association limited.

The decree is affirmed.

GRANT, C. J., and BLAIR, MOORE, and CARPENTER, JJ., concurred.